## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE D. PERKINS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC K. SHINSEKI, Secretary of Veterans | : | |
| Affairs, | : | |
| Defendant. | : | NO. 08-1244 |

### MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                       **June 29, 2012**

### I.      Introduction

Plaintiff Tyrone Perkins ("Plaintiff"), an African-American male and former employee

with the Department of Veterans Affairs ("VA"), brings this action against Eric K. Shinseki, the

Secretary of Veterans Affairs ("Defendant"). Plaintiff alleges that VA management, in particular

James Ramos and Carol Winter, racially discriminated and retaliated against him in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C.

§ 1981. Plaintiff alleges three adverse actions: (1) in 2006, management denied Plaintiff's

application for a promotion to the GS-13 Systems Administrator position in favor of two white

male candidates; (2) management unfairly charged him AWOL on a number of dates in 2006 and

2009; and (3) in 2009, management demoted him, reassigned him, and suspended him for 10

days without pay. See Pl. Br. at 1; Audio File 6/21/12 at 19:45-21:00 (ECF No. 67). Defendant

moves for summary judgment pursuant to Fed. R. Civ. P. 56(c) (ECF No. 53). For the following

reasons, Defendant's Motion is DENIED.

## II.    Summary of Undisputed Facts

The following is a summary of undisputed facts.[1]  Other facts bearing on the case are in dispute and will be discussed later in this Memorandum.  The Court views all facts and inferences in the light most favorable to Plaintiff, the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Plaintiff worked for the VA from 1977 until his resignation on August 1, 2009.  Def. MUF ¶ 1.  At the time of his resignation, Plaintiff held the position of GS-11 Information Technology Specialist in Philadelphia.  Id. ¶¶ 56, 64.  During Plaintiff's tenure at the VA, and especially between 2002 and 2009, Plaintiff filed numerous EEO complaints against his employer alleging that his supervisors were racially discriminating against him.  Id. ¶¶ 7, 11, 73. The complaints specifically named James Ramos and/or Carol Winter as the "responsible management officials" involved.  See, e.g., Def. Exh. 14.  The details of these complaints need not be recited here; what is important for purposes of this Motion is that one or more of these complaints were pending during all of the alleged adverse actions.

Between 2006 and 2009, the VA rendered a number of unfavorable decisions regarding Plaintiff's employment and job performance.  The first incident occurred in May 2006, when Plaintiff applied and interviewed for one of two available GS-13 Systems Administrator positions.  At the time of his application, he was working as a GS-12 employee on the Information Technology Help Desk.  Def. MUF ¶¶ 7-8.  James Ramos and a Mr. John Carr interviewed Perkins and six other candidates for the positions, all of whom were Caucasian.  Id.

---

[1] Defendant submitted an itemized statement of material undisputed facts ("Def. MUF") for purposes of this Motion, and Plaintiff submitted an itemized response ("Pl. MUF").  Statements which an opposing party "disputed" were deemed undisputed for purposes of this Motion if the party's explanation of the dispute was non-responsive or failed to reference supporting evidence in the record.  See Fed. R. Civ. P. 56(c), (e).

¶ 9-10.  Two of the other six men were chosen.  Id.  The documents recording the evaluations of the seven candidates reflect that the two selected candidates rated similarly to Plaintiff in every category except in "Experience," where the selectees were rated higher.  Def. Exh. 17; Def. Br. at 24-25.

Also in 2006 and then again in 2009, Plaintiff was repeatedly docked pay for being Absent Without Leave ("AWOL").  Def. Exhs. 5-6.  The majority of the AWOL charges were ultimately reversed by VA management and Plaintiff was reimbursed for any lost compensation; however, AWOL charges resulting in a loss of slightly less than one day's pay were not reversed. See Audio File 6/21/12 at 21:30-22:30 (ECF No. 67).  The unreversed AWOL charges included, among other things, a charge rendered by Mr. Ramos for time on August 29, 2006 that Plaintiff spent meeting with his attorney to prepare for an EEO mediation.  That day, Plaintiff left a voicemail with Ramos requesting leave to meet with his EEO attorney more than two hours before the meeting was supposed to take place.  Def. Exh. 1 at 71:2-5; Def. Exh. 5.  Ramos nevertheless charged him AWOL for the absence.

Finally, on February 18, 2009, Troy Collum, one of Plaintiff's supervisors, proposed terminating Plaintiff.  Collum cited three grounds for the termination: first, that Plaintiff had failed to maintain a 90% performance standard after being placed on a probation-like performance improvement plan ("PIP"); second, that Plaintiff had made inappropriate use of government email during December 2008; and third, that Plaintiff was AWOL on January 7, 2009 and had a history of AWOL charges.  Def. Exh. 10; see Def. Exh. 9 at 90-99 (copies of the emails).  Carol Winter, the decision-maker regarding the proposed termination, decided that in light of Plaintiff's length of service, he would not be terminated.  Instead, on April 15, 2009,

3

Plaintiff received a demotion to the GS-11 level, reassignment to a group in which he had previously worked, and a 10-day suspension (of which he was permitted to serve 4 days over the weekend).  Def. Exh. 12.

Effective August 1, 2009, Plaintiff resigned from the VA.  Def. MUF ¶ 64; Def. Exh. 2.

**III.    Procedural History in this Court**

Plaintiff has filed no less than five complaints in this litigation, with the Fifth Amended Complaint filed on August 29, 2011 (ECF No. 34).  According to Plaintiff's counsel, each new complaint added allegations related to Plaintiff's employment at the VA after those allegations were administratively exhausted through resolution of pending EEO matters.  Audio File 6/21/12 at 2:00-3:00, 7:00-8:00 (ECF No. 67).  Presently, there remain no pending EEO matters related to this case, and there are no other pending litigations raising the claims that Plaintiff brings before the Court.  Id. at 10:30-11:30.

On April 11, 2012, Defendant filed a Motion for Summary Judgment (ECF No. 53).  The Motion asserts myriad defects in Plaintiff's case, but its most compelling arguments include (a) that Plaintiff's claims about the VA's denial of the GS-13 promotion fail because he cannot adequately rebut Defendant's legitimate reason for its decision, as required under the McDonnell Douglas burden-shifting framework, and (b) that Plaintiff's claims regarding the AWOL charges and demotion/reassignment/suspension fail because he has not made out a prima facie case with respect to those actions.

On May 29, 2012, Plaintiff submitted a lengthy response brief highlighting the evidence favorable to him in the record (ECF No. 59).  Among other things, Plaintiff points to evidence that, in his view, reveals that the GS-13 selectees had inferior relevant work experience

compared to Plaintiff's experience.  He also highlights evidence tending to show that he followed proper procedures for obtaining leave on the days he was charged AWOL, and that the performance metrics used to justify his demotion relied on a performance monitoring system that the VA knew was faulty.

Defendant replied on June 12, 2012, and the Court held oral argument on June 21, 2012 (ECF Nos. 64, 67).  At the close of argument, the Court invited the parties to submit any additional citations or explanations by way of a short supplemental letter.  Defendant and Plaintiff submitted their letters on June 24 and June 25, 2012, respectively.

## IV.    Standard of Review

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[2]  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by showing the district court that "there is an

---

[2] Although this civil action was pending when the Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010, the Court references the amended summary judgment standard in Fed. R. Civ. P. 56(a), which substitutes "genuine dispute" for "genuine issue," the phrase in former subdivision (c).  The Rules Advisory Committee explained that the 2010 Amendments do not affect the substantive standard for summary judgment or the applicability of prior decisions construing the standard.  Fed. R. Civ. P. 56 Advisory Committee's Note.  Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order, the amended rule governs all proceedings commenced on or after December 1, 2010, and all proceedings then pending, "insofar as just and practicable."  United States Courts, Rules and Forms in Effect: Rules and Forms Amendments Effective 12/1/10, http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/Overview/RulesForms120110.aspx (last visited Apr. 5, 2011).

absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The party opposing summary judgment must rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322. The district court may grant summary judgment "[i]f the evidence is merely colorable, or is not significantly probative." <u>Anderson</u>, 477 U.S. at 249 (internal citations omitted). Under Rule 56, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-movant. <u>Id.</u> at 255 (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).

## <u>V.</u>    <u>Discussion</u>

### A.    **Alleged Adverse Action #1: Denial of the GS-13 Promotion**

Plaintiff was rejected for a GS-13 Systems Administrator position in May 2006, which he contends was the result of racial discrimination and retaliation. Turning first to the former claim, Defendant expressly concedes that Plaintiff can make out a <u>prima facie</u> case of racial discrimination with respect to this adverse action. <u>See</u> Def. Br. at 24; Audio File 6/21/12 at 25:00-26:00 (ECF No. 67). Accordingly, the Court's remaining inquiry under the <u>McDonnell Douglas</u> framework, <u>see McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), is whether Plaintiff has introduced evidence adequate to rebut Defendant's legitimate, non-discriminatory reason for denying him the promotion—namely, that Plaintiff did not have as much experience as the selectees. Plaintiff may survive summary judgment either by (a) pointing to evidence from which a factfinder could reasonably disbelieve the employer's articulated legitimate reason, or (b) showing that an invidious discriminatory [or retaliatory] reason was more likely than not a

6

motivating or determinative cause of the employer's action.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

Plaintiff casts doubt on Defendant's articulated reasons for his rejected candidacy as follows.  Evidence in the record of Plaintiff's work history, as well as his own testimony, reflects that Plaintiff had past experience in managing technical systems with features similar to the Microsoft Exchange system.  <u>See, e.g.,</u> Pl. Exh. 5 at 114-15.  It was precisely this Exchange system that was described in the formal position descriptions, as well as in Ramos' testimony about the positions, as the primary responsibility of the GS-13 jobs.  Pl. Exh. 29; Pl. Exh. 2 at 88.  Defendant did not point to evidence in its briefs or at oral argument to contradict the notion that Plaintiff had this relevant experience, though Defendant contends, without providing citations, that the selectees' experience was better on the whole.

Defendant's unsupported assertions contrast with Ramos' deposition testimony, in which he stated that the eventual selectees <u>did not</u> have "experience" with important features of this type of system, though he qualified this by saying that the selectees had some "exposure."  <u>See</u> Pl. Exh. 2 at 88-89.  Ramos also admitted that one selectee had <u>no</u> prior experience working in systems administration, at least not within Ramos' division, and Ramos "did not know" whether the selectee had any systems administration experience at all.  Pl. Exh. 2 at 46-47.  This testimony seems inconsistent with Ramos' decision to rate the white selectees better in the "Experience" category than Plaintiff, yet Defendant points to nothing in the record that adequately reconciles or negates Ramos' testimony.

In these circumstances, Plaintiff has raised a genuine dispute of fact regarding whether his experience exceeded that of the selectees; if that dispute is resolved in his favor, a factfinder

could reasonably disbelieve Defendant's contention that Plaintiff was passed over for the promotion because he had less experience.  Accordingly, Defendant is not entitled to judgment as a matter of law, and the Court need not address Defendant's other arguments about this claim.[3]

The Court turns now to Plaintiff's retaliation claim premised on the denial of the GS-13 position, which Defendant's briefs did not address.  Defendant's counsel explained at oral argument that the Motion does not discuss this claim because the Fifth Amended Complaint did not explicitly allege it.

As a threshold matter, the Court does not agree with this characterization of the Complaint.  By the document's plain language, the retaliation claim asserted on page 8 incorporates by reference paragraphs 6 through 25, which specifically allege that Plaintiff was denied a GS-13 promotion in 2006 in favor of "two less experienced, white employees neither of whom had any prior EEO history."  Compl. ¶ 10.  But in any event, whether "explicitly" pleaded or not, the Court holds that in the circumstances presented here, Defendant has been provided with adequate notice of Plaintiff's claims.  Moreover, because of the dispute of material fact about Plaintiff's past work experience and for other reasons, the Court will not grant summary judgment with respect to this retaliation claim.

**B.      Alleged Adverse Action #2: The AWOL Charges**

Plaintiff was carried AWOL on a number of dates in 2006 and 2009, ultimately resulting in Plaintiff's loss of slightly less than one day's pay and alleged emotional distress and

---

[3] The Court notes briefly that Defendant cannot secure summary judgment simply by citing evidence, much emphasized in its briefs and at oral argument, that other African-Americans were promoted by the same VA managers involved in this case.  See Def. Br. at 26; Def. Reply Br. at 8.  While this evidence will certainly be relevant (and perhaps persuasive) at trial, a factfinder is not required to conclude as a matter of law that a manager who promotes some African-Americans cannot have discriminated against other African-Americans.

humiliation.  Audio File 6/21/12 at 21:30-22:30, 35:00-36:00 (ECF No. 67).  Defendant argues

that the AWOL charges do not constitute an "adverse action," and that even if they did, Plaintiff

cannot make out a prima facie case of retaliation or discrimination.  Defendant also argues that

the AWOL was justified because Plaintiff did not follow proper leave policies and

misrepresented his need for leave.

The Court rejects both of Defendant's threshold arguments.  The financial ramifications

of the AWOL charges were relatively small (approximately $400, according to Plaintiff's

counsel, see Audio File 6/21/12 at 39:30-40:00 (ECF No. 67)); however, in the circumstances

presented here, and in light of Defendant's inability to cite to applicable binding authority, the

Court does not consider the AWOL charges so de minimis as to preclude their presentation to a

jury.

The Court is similarly unpersuaded by Defendant's challenges to Plaintiff's prima facie

case.  With respect to retaliation, Plaintiff need only show (1) that he engaged in protected

activity, (2) that he was subject to a contemporaneous or subsequent adverse action, and (3) that

there was a causal link between the protected activity and the adverse action.  Mara v. Phila.

Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007).  Causal link may be shown by a "broad array of

evidence," id. at 302, and Plaintiff has pointed to such evidence here.  For example, on August

29, 2006, Plaintiff was charged AWOL by Mr. Ramos for taking time to meet with his EEO

attorney before a mediation involving an EEO complaint against Mr. Ramos.  The AWOL was

imposed even though, according to another supervisor's testimony, it was the VA's ordinary

practice to grant employees leave related to EEO mediation.  See Pl. Exh. 9 at 82-83.  This

evidence is certainly sufficient to establish a prima facie case of retaliation.

With respect to discrimination, Plaintiff must show, inter alia, that similarly-situated people not of a protected class were treated more favorably with respect to AWOL charges, or that there is otherwise an inference of racial discrimination.  McDonnell Douglas, 411 U.S. at 802.  Although Plaintiff has not demonstrated the former, he survives judgment as a matter of law on the latter, viewing the record as a whole.  For instance, if proven at trial, Ramos' allegedly discriminatory denial of the GS-13 promotion would be crucial evidence tending to support Plaintiff's allegations that the AWOL charges by Ramos were also discriminatory.  To provide another example, the record contains evidence tending to show that Ramos declined to enroll Plaintiff in a mandatory training class in which he enrolled his other employees, see Pl. Exh. 11 at 31-33.  Though this failure to enroll Plaintiff carries no overtly "racial" quality, if interpreted in the light most favorable to Plaintiff, it might substantiate his claims of discrimination.  In sum, the Court does not agree that Plaintiff has failed to make out a prima facie case of discrimination, even if his claims regarding the AWOL charges are more convincingly presented, at least at this juncture, as claims of retaliation.

Finally, Plaintiff succeeds in rebutting Defendant's non-discriminatory and non-retaliatory justification for the AWOL by creating genuine disputes of material fact regarding whether he properly sought and utilized work leave.  Among other things, Plaintiff highlights portions of the record tending to prove that (a) at least some VA supervisors permitted employees to provide notice simply by leaving a voicemail, see Pl. Exh. 6 at 101-03; (b) the applicable collective bargaining Master Agreement stated that the amount of notice required for sick leave was only 2 hours, see Pl. Br. at 13-14 (text of Agreement); and (c) employees did not need to call in each day that they took leave after having called in the first day, see Pl. Exh. 16 at 385-93.

This evidence conflicts with Defendant's assertions that Plaintiff was failing to follow protocol and abusing the leave policy—indeed, Defendant conceded at oral argument that the parties dispute the facts regarding Plaintiff's requests for and use of leave.  Audio File 6/21/12 at 16:00-17:00 (ECF No. 67).  This conflict must be left to the jury to resolve.

### C.    Alleged Adverse Action #3: The Demotion/Reassignment/Suspension

On April 15, 2009, Plaintiff was demoted, reassigned, and suspended for 10 days pursuant to a review by Carol Winter, one of his former supervisors at the VA.  Def. Exh. 12. The reasons given for the decision were essentially the same as those cited in a proposed termination submitted by Troy Collum earlier that year, namely (1) failure to maintain a 90% performance standard after being placed on a probation-like performance improvement plan ("PIP"); (2) inappropriate use of government email during December 2008, see Def. Exh. 9 at 90-99 (copies of the emails); and (3) an AWOL charge on January 7, 2009 and Plaintiff's past history of AWOL charges.  Def. Exhs. 10, 12.

Turning first to the retaliation claim, Defendant concedes that Plaintiff has established a prima facie case of retaliation regarding this adverse action.  See Def. Br. 45-46.  The Court's central inquiry then, is whether Plaintiff has met his burden under McDonnell Douglas by casting reasonable doubt on the articulated reasons for Ms. Winter's decision.

Plaintiff meets this burden in the following three ways.  First, Plaintiff points to abundant evidence that the phone system that tracked employee performance was flawed and inaccurate, and more importantly, that VA management knew it was flawed and inaccurate, yet still used it to discipline Perkins.  See Pl. Br. at 46-49 (citations to record).

Second, Plaintiff raises a dispute regarding whether his emails could, consistent with VA

policy, form the basis for the substantial punishment he received, in light of the fact that they "pertain to work-related subjects," do not suggest "racial, ethnic, sexual or religious bias or intolerance in any fashion," and are less egregious than the emails generally deemed in the employment case law to merit discipline.  Pl Br. at 53-54.  Although the Court is mindful that an employer is not required to be "wise, shrewd, prudent, or competent" in its employment decisions, Fuentes, 32 F.3d at 765, in the circumstances presented here, the Court cannot say that Defendant was entitled as a matter of law to use the emails as the basis for a demotion, reassignment, and suspension.  Among other things, this is an area in which a determination of the credibility of live trial testimony by the emails' recipients might be helpful in interpreting the effect of the emails and, in turn, whether it was pretext for the VA to use them as a basis for discipline.

Finally, Plaintiff has adequately cast doubt on the AWOL justification for its adverse action because, as already explained above, there is a dispute of fact regarding whether he complied with the leave policies and practices.  What is more, his "history" of AWOL charges was cited as a basis for discipline even though the great majority of his AWOL charges were ultimately reversed.  Def. Exh. 6.  In sum, Plaintiff is permitted to proceed to a jury with his claim that the demotion/reassignment/suspension was retaliatory.

Turning to the question of racial discrimination, Defendant's counsel stated at oral argument that this was yet another claim not properly pleaded in the Fifth Amended Complaint. Audio File 6/21/21 at 41:00-42:00 (ECF No. 67).  Although this is technically correct—i.e., the racial discrimination claim does not specifically incorporate by reference the paragraphs referring to the demotion/reassignment/suspension, see Compl. at 8—the Court sees no purpose at this late

stage of the litigation in dismissing the claim merely so that Plaintiff may properly replead it.  As the Court explained earlier in this Memorandum and at oral argument, the Fifth Amended Complaint, discovery, and other proceedings in this case have provided Defendant with fair notice of the claims for which Plaintiff seeks relief.  In any event, the Court is persuaded that Plaintiff has made out a prima facie case of discrimination with respect to the demotion/reassignment/suspension and has met his burden under the McDonnell Douglas framework, for substantially the same reasons already discussed in pages 9-12 of this Memorandum.

## VI.    Conclusion

The Court has carefully considered all of Defendant's arguments and finds them to be without merit.[4]  For the reasons set forth above, Defendant's Motion for Summary Judgment is DENIED.  An appropriate Order follows.

O:\CIVIL 07-08\08-1244 Perkins v. Shinseki\Perkins SJ memo.wpd

---

[4] Defendant raises a number of arguments not specifically discussed in this Memorandum.  All of those arguments, including the issue of exhaustion that Defendant emphasized at oral argument and in his supplemental memorandum, are unavailing at this time.  Defendant remains free, of course, to reraise those challenges at trial and in post-trial motions.