**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


TYRONE D. PERKINS                    :           CIVIL ACTION

  v.                                 :

ERIC SHINSEKI                        :           NO. 08-1244


**MEMORANDUM RE:  POST-TRIAL MOTION**

Baylson, J.                                                    February  8 , 2013

**I.     Introduction**

Plaintiff Tyrone Perkins ("Plaintiff"), an African-American male and former employee

with the Department of Veterans Affairs ("VA"), brought this action against Eric K. Shinseki, the

Secretary of Veterans Affairs ("Defendant").  Plaintiff alleged that VA management, in particular

James Ramos and Carol Winter, racially discriminated and retaliated against him in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C.

§ 1981.  Plaintiff alleged three adverse actions:

> 1.  In 2006, management denied Plaintiff's application for a
>     promotion to the GS-13 Systems Administrator position in
>     favor of two white male candidates;
>
> 2.  Management unfairly charged him AWOL (away without
>     leave) on a number of dates in 2006 and 2009; and
>
> 3.  In 2009, management demoted him, reassigned him, and
>     suspended him for 10 days without pay.

After extensive discovery and numerous amended complaints over several years, this

case went to trial in July, 2012.  The jury returned a verdict, following answers to several

interrogatories, which included damages in favor of Plaintiff in the amount of $15,000.

Plaintiff has filed a motion (ECF 96) seeking back pay and other damages, equitable relief, including reinstatement, and attorneys' fees and costs.  For the reasons stated below, Plaintiff's petition will be **GRANTED** in part for certain periods of back pay, and for attorneys' fees and costs.  Plaintiff's motion for additional equitable relief will be **DENIED**.

## II.   <u>Underlying Facts</u>

Plaintiff worked for the VA from 1977 until his resignation on August 1, 2009.   At the time of his resignation, Plaintiff held the position of GS-11 Information Technology Specialist in Philadelphia.   During Plaintiff's tenure at the VA, and especially between 2002 and 2009, Plaintiff filed numerous EEO complaints against his employer alleging that his supervisors were racially discriminating against him.

At trial, the testimony was disputed on many issues.  Plaintiff testified to numerous acts and omissions by the executives at the VA which, he told the jury, showed that the VA intended to and did discriminate him based on his race, and retaliated against him because of his EEO complaints.  The VA witnesses consistently disputed Plaintiff's version of events, and denied any racial discrimination or retaliation because of the EEO complaints.

The jury answered the first interrogatory finding that Plaintiff had failed to prove discrimination based on race, and, therefore, the Court is bound by that finding, which is not attacked by Plaintiff's post-trial motion.  However, the jury did find that the VA retaliated against Plaintiff because of his EEO complaints.  The Court, with agreement of counsel, had delineated separate jury interrogatories for each of the three adverse actions listed above, but the jury found in favor of Plaintiff only regarding the unfair AWOL charges, reflecting evidence that Plaintiff was not paid for four days of work during 2006 and 2009 (32 hours).  The jury found against Plaintiff regarding the promotion in 2006 and the suspension and demotion in 2009.

Plaintiff and the government agree Plaintiff is entitled to $1,853.28 in accordance with the jury's findings in Plaintiff's favor, including interest as required by 5 U.S.C. § 5596.

Plaintiff seeks additional equitable relief as follows:

1. Determination that Plaintiff's prior suspension should be declared void ab initio;

2. The VA should provide Plaintiff with corrected records and full back pay for six (6) additional work days in 2009 for which he was suspended without pay; and

3. Reinstatement of Plaintiff because his decision to resign from the VA and to retire from federal service was the direct result of the retaliatory hostility he had suffered since filing his EEO claims, and this relief is warranted by the jury's finding in his favor regarding the AWOL issue.

It should be noted that Plaintiff's initial post-trial motion and brief asserted that he was entitled to back pay, in addition to the AWOL back pay as reflected in the jury's answer to interrogatory 3(a), and correction of VA records.  In a subsequent filing, Plaintiff acknowledged that he had, in fact, received this payment (ECF 99).

After review of the record and briefs, the Court concludes that Plaintiff is not entitled to additional equitable relief because granting this relief would be inconsistent with the jury's verdict, and contrary to precedent.

It should be noted at the outset that Plaintiff's arguments for reinstatement in his post-trial motion rely on fine distinctions for which he sought no jury findings either in his points for charge (ECF 77) or during the discussion of proposed jury interrogatories at trial.  Specifically, Plaintiff did not seek jury findings regarding a hostile work environment, or whether the VA forced him to resign, which may have warranted the relief he currently seeks.  In addition, the Court's instructions to the jury, as to which Plaintiff made no objection, specifically delineated the issues that the jury was to decide.  The Court's charge stated:

In this case, Mr. Perkins is alleging that his former employer, the VA, took a number of adverse employment actions against him based on his race.  Specifically Mr. Perkins contends that the VA discriminated against him when it (1) denied him a GS-13 promotion in 2006, (2) charged him AWOL on certain days in 2006 and 2009, and (3) demoted, reassigned, and suspended him in 2009.  In order for Mr. Perkins to recover on this discrimination claim he must prove that the VA intentionally discriminated against him.

The Court specifically told the jury, with agreement of counsel, that it was not to award damages for the amount of wages that Plaintiff would have earned either in the past or in the future if he had continued employment with the defendant, so called "back pay" and "front pay."

## III.   <u>Request for Equitable Relief</u>

Plaintiff's major request for equitable relief is for reinstatement, claiming that he was constructively discharged due to a hostile work environment.[1]  Plaintiff bases his request on the "make-whole" doctrine, relying on <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 1975.  Third Circuit precedent is clear that district courts have substantial discretion to fashion equitable remedies for victims of unlawful discrimination and retaliation, and that this discretion must be orientated toward effecting the "make-whole" doctrine.  As stated in <u>Eshelman v. Agere Systems, Inc.</u>:

> <u>Congress armed the courts with broad equitable powers to effectuate this "make whole" remedy</u>.  District courts are granted wide discretion to locate "a just result" regarding the parameters of the relief granted in the circumstances of each case.
>
> In exercising its discretion to fashion a remedy, district courts should, <u>inter alia</u>, endeavor to restore the employee to the economic status quo that would exist but for the employer's conduct.

---

[1] It should be noted that although Plaintiff has petitioned for reinstatement, he does not actually wish to go back to work at the VA, but rather asserts that this Court granting reinstatement will entitle him to certain benefits that he would not otherwise receive.  Nonetheless, the Court must apply the legal standards governing the reinstatement.

554 F.3d 426, 440 (3d Cir. 2009) (first emphasis added) (citations and quotations omitted).[2]  It is well established that "reinstatement is the preferred remedy" in cases of wrongful discharge in violation of Title VII, and that reinstatement may be denied only if the facts of a case demonstrate "special circumstances militating against it."[3]  Squires v. Bosner, 54 F.3d 168, 172-73 (3d Cir. 1995); accord Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 86 (3d Cir. 2009).

However, this is not a case of wrongful discharge.  In fact, a finding of wrongful discharge would be contrary to the jury's fact-finding, and the Third Circuit has been very clear that district courts may not revisit fact questions submitted to the jury when determining whether reinstatement is appropriate.  Squire, 54 F.3d at 174 (citing EEOC v. Century Broad. Corp., 957 F.2d 1446 (7th Cir. 1992) ("[I]n deciding whether to grant equitable relief under Title VII, the district court [is] prohibited from reconsidering any issues necessarily and actually decided by the jury." (alteration in original) (quotation omitted))).

Absent a finding of wrongful termination, nothing in this case suggests that reinstatement is necessary to make Plaintiff whole.  Reinstatement would, in fact, be generally inconsistent with the jury's verdict, because it would require the Court to find that Plaintiff suffered injuries

---

[2] Eshelman addressed an ADA claim, but expressly states that because "[t]he ADA incorporates the remedies provided for in Title VII . . . . we will rely upon Title VII law to analyze the issue presented herein."

[3] There are many Third Circuit, and District Court decisions within the Third Circuit, denying reinstatement even though the plaintiff won a verdict and proved illegal discrimination.  While the Third Circuit has never endorsed an exclusive list of acceptable reasons for denying reinstatement, it has generally recognized that reinstatement may be "inappropriate where there is a likelihood of continuing disharmony between the parties or unavailable because no comparable position exists."  Donlin, 581 F.3d at 86 (citing Blum v. Witco Chem. Corp., 829 F.2d 367, 374 (3d Cir.1987); Goss v. Exxon Office Sys. Co., 747 F.2d 885, 890 (3d Cir.1984)); accord Squires, 54 F.3d at 174; James v. Norton, 176 F. Supp. 2d 385, 392-93 (E.D. Pa. 2001) (Schiller, J.) (discussing reinstatement precedent as persuasive authority for retroactive promotion considerations (citing In re Continental Airlines, 125 F.3d 120, 134 (3d Cir. 1997); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1103 (3d Cir. 1995); Feldman v. Phila. Hous. Auth., 43 F.3d 823, 831 (3d Cir. 1994); Robinson v. SEPTA, 982 F.2d 892, 899 (3d Cir. 1993); Ellis v. Ringgold Sch. Dist., 832 F.2d 27, 30 (3d Cir.1987); Maxfield v. Sinclair Int'l, 766 F.2d 788 (3d Cir. 1985))).

of significantly greater magnitude than are supported by the verdict.  Considerations of fairness to VA also counsel strongly against such an award.

Plaintiff's brief asserts, with only one case citation,[4] that he is entitled to reinstatement because he resigned as of August 1, 2009, due to the hostile work environment that he claims existed.  The Court disagrees that Plaintiff proved a hostile work environment existed, or that such a finding can be made consistent with the jury's verdict.  It is well established that "'[h]ostile environment harassment claims must demonstrate a continuous period of harassment,'" and "'isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"  Huggins v. Coatesville Area School Dist., 452 Fed. App'x 122, 127 (3d Cir. 2011) (quoting Drinkwater v. Union Carbide Corp., 904 F.2d 853, 863 (3d Cir.1990) and Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment" and directing courts to look at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance")).  Although Plaintiff's resignation letter, Exhibit 46, contains assertions of a hostile work environment, and he testified consistently with the letter, the letter is obviously self-serving, and was written after this suit commenced.  The letter anticipated Plaintiff's testimony that he was improperly denied the promotion in 2006, and that he was improperly suspended and demoted in 2009.  The jury found against Plaintiff on both of these issues, and its rejection of Plaintiff's testimony must be given great respect and carries legal consequences.  A finding of a hostile work environment would be inconsistent with those jury determinations, because they

---

[4] The only case which Plaintiff cites as precedent for reinstatement, Slayton v. Ohio Department of Youth Services, 206 F.3d 669, (6 Cir. 2000), is thoroughly distinguishable because in that case, the jury had made a specific finding that there was a hostile environment against the plaintiff.

clearly reflect the jury's rejection of Plaintiff's credibility on the major issues in the case, and agreement with Plaintiff on only one relatively minor claim, that he was improperly charged with being AWOL on four (4) days from 2006 through 2009, which cannot sustain a finding of a hostile work environment.[5]

Plaintiff also failed to show how an award of reinstatement is supported by, or even consistent with, the jury's finding against him on all but one relatively minor claim.  The jury rejected Plaintiff's claims based on racial discrimination, which was the major focus of the Plaintiff's trial testimony.  Although the jury found in favor of Plaintiff on his claim of retaliation, the jury found in favor of Plaintiff on only one of three sub-claims, that he was improperly denied pay as AWOL for four (4) days.   This was clearly the least significant issue in the case.  The jury found against Plaintiff on the two major issues, the refusal to promote him in 2006, and his suspension and demotion in 2009.  For the Court to award Plaintiff's reinstatement based on improper AWOL characterizations for four (4) days, when the jury cleared the VA of any improper conduct on all major issues, would be tantamount to ignoring the jury's verdict and would be unfair to the VA.  It is notable that Plaintiff has not cited, and the Court has not found, a single case where the court awarded reinstatement after a jury found against the plaintiff on the most major claims and in favor of the plaintiff on only one minor claim.

The Court also finds that the jury's conclusions were quite justified by the evidence presented at trial.  Plaintiff introduced very scant evidence in his own favor, other than his own testimony.  The jury heard testimony from many witnesses who observed the day to day actions

---

[5] The relatively minor nature of the AWOL issue is also shown by Exhibit 45, the April 15, 2009 letter explaining the VA's reasons for the demotion and suspension of plaintiff. The AWOL charges against plaintiff are only one of eight (¶ 4(h)) instances of plaintiff's misconduct. The Court rejects plaintiff's claim that the AWOL charge was a significant factor in the VA's decision.

of management and Plaintiff.  Of particular importance was the existence of several emails that Plaintiff wrote, which were sharply critical of VA management, and well known within the local agency.  Plaintiff eventually apologized for the language used in these emails.  The Court does not make any independent finding on the credibility of Plaintiff or the other witnesses, but only respects the verdict of the jury, which can only be interpreted as a rejection of significant amounts of Plaintiff's claims in this case, and inherent in that, a rejection of Plaintiff's credibility in large measure.  Ultimately, Plaintiff's brief basically ignores the jury's verdict, and pretends the jury believed Plaintiff; the opposite is true.

Furthermore, Plaintiff's reinstatement would also be unfair to the VA and would interfere with proper management/employee relationships, and hurt the morale of other employees.  The Court takes into account the fact that the VA is an important public agency, serving the needs of millions of our military veterans.  The proper administration of VA benefits and claims requires a strong management as well as dedicated employees.  Although the Court makes no findings against Plaintiff as a productive employee of the VA for many years, the Court cannot, in an honest assessment of the overall trial testimony, conclude that Plaintiff is entitled to reinstatement, and believes that that would be counter-productive to smooth management of this important federal agency.[6]

## IV.   <u>Petition for Attorneys' Fees</u>

### A.   **Legal Standard**

The first step to determine the reasonableness of an attorney's fee request is to calculate the "lodestar" – the "number of hours reasonably expended on the litigation multiplied by the

---

[6] The Court recognizes that these may not be legitimate considerations in cases of wrongful discharge, <u>see</u> <u>Squires</u>, 54 F.3d at 173 ("reinstatement in unlawful-discharge cases often will place some burden on the agency . . . and, as a result, the public's business may be conducted somewhat less efficaciously. . . . we agree with those courts which have ruled that such routinely 'incidental' burdens . . . are . . . usually insufficient, without more, to tip the scales against reinstatement"), but this is not a wrongful discharge case.

reasonably hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (U.S. 1983); accord McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009).  The Supreme Court, in Hensley v. Eckerhart, and the Third Circuit have instructed courts to exclude from "the hours reasonably expended" any hours that are "'excessive, redundant, or otherwise unnecessary.'" McKenna, 582 F.3d at 455 (quoting Hensley, 461 U.S. at 434-35).  Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).

Regarding the reasonable hourly rate, the plaintiff bears the burden of "'producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case.'" Jama v. Esmor Corr. Srvs, Inc., 577 F.3d 169, 180 (3d Cir. 2009) (quoting Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997)).  The defendant can contest the prima facie case by presenting appropriate evidence. Id.  A reasonable hourly rate is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "'the experience and skill of the . . . attorneys and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984), and citing and quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990)).  District courts also may assign different rates to different tasks, regardless of who performs them.  "Just as '[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn,' counsel should not be using 'highly priced talent for matters easily delegable to non-professionals or less experienced associates.'" Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 259 (E.D. Pa. 2011) (Robreno, J.) (alteration in original) (quoting

Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir.1983)).  Determinations of reasonable

hourly rates are held to a clearly erroneous standard, and may be reversed only if they are

"'completely devoid of a credible evidentiary basis or bear[] no rational relationship to the

supporting data.'"  Jama, 577 F.3d 169, 180 (quoting Shire U.S. Inc. v. Barr Labs., Inc., 329

F.3d 348, 352 (3d Cir. 2003)).

        In cases where the plaintiff is both successful and unsuccessful on related claims, the

Supreme Court in Hensley instructed district courts to adjust the award to reflect such limited

success:  "[i]f . . . a plaintiff has achieved only partial or limited success, the product of hours

reasonably expended on the litigation as a whole times a reasonable hourly rate may be an

excessive amount."  461 U.S. at 436.  In cases such cases, district courts should "should reduce

the hours claimed by the number of hours spent litigating claims on which the party did not

succeed, that were distinct from the claims on which the party did succeed," McKenna, 582 F.3d

at 455 (quotation omitted),or, if such neat division of time is not possible, adjust the award to

reflect "the significance of the overall relief obtained by the plaintiff in relation to the hours

reasonably expended on the litigation."  Hensley, 461 U.S. at 435; accord Farrar v. Hobby, 506

U.S. 103, 114 (1992) ("the most critical factor in determining the reasonableness of a fee award

"is the degree of success obtained."" (quoting Hensley, 461 U.S. at 436)).

        The Supreme Court elaborated on the "significance of the overall relief" standard in

Farrar v. Hobby, holding that district courts are "'obligated to give primary consideration to the

amount of damages awarded as compared to the amount sought.'"  506 U.S. at 114-15 (quoting

Riverside v. Rivera, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)).

Accordingly, "when a plaintiff recovers only nominal damages because of his failure to prove an

essential element of his claim for monetary relief, the only reasonable fee is usually no fee at

all." Id. at 115.  According to the Third Circuit, Farrar does not, however, limit district courts to considering the amount of damages; they may also consider "the significance of the legal issue decided and whether the litigation served a public purpose."  Jama, 577 F.3d at175-76 (citing Farrar, 506 U.S. at 121 ("an award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved" (O'Connor, J., concurring))).

>        **B.    Discussion**

Here, Plaintiff did not prevail on his claim of racial discrimination.  He did prevail on his retaliation claim, but only prevailed on one of three claims for damages, and the smallest of the three claims.  Nonetheless, he is still a prevailing party, and his recovery was more than nominal. Under Hensley, success on a relatively minor claim with a relatively small damages award qualifies as limited success.  Looking at the additional considerations permitted under the Third Circuit's interpretation of Farrar, the significance of the legal issue and whether the litigation served a public purpose, it is doubtful that any of these factors are present in this case.  As such, an award that includes all of the hours Plaintiff's counsel spent litigating this case, including those spent litigating unsuccessful claims, would be excessive.  The Court must award only what is reasonable in relation to the results obtained.

>        **1.    Reasonable Hours**

The Court has been impressed with the detailed recordkeeping presented by Exhibit 8, which are detailed billing records for Mr. Shapiro and the other attorneys in this office that worked this case from 2006 forward to late 2012, a period of almost six years.  The Court has no reason not to accept all of the hours as having been legitimately worked by Mr. Shapiro and the attorneys in his firm.

### i.      Settlement Strategies

The Court has had extensive opportunity to observe Mr. Shapiro's work on this case.  Mr.
Shapiro represented Plaintiff with a high degree of tenacity, expertise, common sense,
cooperation with opposing counsel, and considerable expertise in litigation.  The government
does complain about certain of Mr. Shapiro's strategies regarding settlement, but the Court is
unwilling to reduce the reasonable hours of any of Plaintiff's attorneys because of these
complaints.  This case was obviously a very sensitive one for Plaintiff, and Mr. Shapiro had to
show considerable professional judgment in representing Plaintiff, and attempting to get the
best possible result for him.

Although the Court will comment on the settlement posture of this case below, at one
early point during the trial, when this Court inquired about settlement, Mr. Shapiro intimated
that Plaintiff was desirous of having a jury verdict and not particularly anxious to settle the case.
This was Plaintiff's prerogative, and the Court does not believe it would be fair to Plaintiff or to
Mr. Shapiro to reduce the reasonable hours because of what might be characterized as a "hard-
nosed" attitude toward settlement approaches. [7]

Mr. Shapiro has done extensive work on this case from the very beginning.  Involvement
of the lawyer who will actually try the case is generally wise from both an efficiency and
strategy point of view.  However, a great deal of Mr. Shapiro's time in the discovery stage of
this case was involved in the issues which proved unsuccessful for Plaintiff, specifically,
Plaintiff's not receiving the promotion in 2006, and his suspension and demotion in 2009.  The

---

[7] The undersigned has written and spoken previously about the overriding emphasis on the settling of civil
cases, which is leading to the destruction of the trial lawyer aspect of the legal profession.  E.g., Are Civil Jury
Trials Going the Way of the Dodo?  Has Excessive Discovery Led to Settlement as an Economic and Cultural
Imperative:  A Response to Judge Higginbotham and Judge Hornby (Apr. 14, 2010), http://www.uscourts.gov/
uscourts/RulesAndPolicies/rules/Duke%20Materials/Library/Judge%20Baylson,%20Are%20Civil%20Jury%20Trial
s%20Going%20the%20Way%20of%20the%20Dodo.pdf.

Court concludes, after the parties extensive briefing, that the most appropriate way to arrive at a fair and reasonable award is to follow two steps.  First, the Court will divide Mr. Shapiro's hours in this case into three categories:

1.  Pretrial work, including drafting complaints, briefs, administrative proceedings, and discovery; and

2.  Summary Judgment briefing and argument, final pretrial preparation, and trial; and

3.  Post-trial work on backpay, the request for reinstatement, and the fee petition.

Second, the Court will reduce each category to reflect only partial success.  The Court agrees to some extent with the government's position that, because of the lack of overall success, all of the hours that Mr. Shapiro recorded for his administrative agency work and pretrial discovery cannot be deemed reasonably expended on Plaintiff's successful claim.  Because this case involved substantially related claims, it would prove difficult, if not impossible, "to divide the hours expended on a claim-by-claim basis."  Hensely, 461 U.S. at 435.  Therefore, the appropriate percentage reduction is discussed below as a downward adjustment to the Court's lodestar calculation.

The Court does not find it appropriate to reduce the actual hours Mr. Shapiro spent on summary judgment, final pretrial preparation, and trial work, because those hours represent time devoted to furthering Plaintiff's successful claim.  Plaintiff insisted that the case should go to trial, and the Court does not believe that the trial would have been measurably shorter even if limited to the AWOL claim.  The background of Plaintiff's relationship with the VA managers would have been an appropriate part of any trial charging retaliation because of EEO complaints.  However, an overall percentage reduction in the lodestar for this work appropriately reflects the level of success achieved in this case.

13

Regarding post-trial work, the Court will exclude any hours that Mr. Shapiro devoted to both back pay, because the initial request was erroneous, and the request for reinstatement, which will be denied. The Court finds that an award is appropriate only for work on the fee petition and will allow half of the total reported hours – thirty-four (34) hours out of sixty-five and a half (65.5) hours – as reflecting that work.

### ii.    Other Plaintiff's Attorneys

This Court's only personal experience was with Mr. Shapiro. The Court is familiar with the pleadings and briefs and accepts Mr. Shapiro's declaration that he was ably assisted by a number of attorneys in his office, in various discovery and briefing aspects of the case. However, due to Plaintiff's limited success, the lodestar for this work is subject to a downward adjustment.

### 2.    Reasonable Hourly Rates

The Third Circuit has previously approved the use of hourly rates established by Community Legal Services ("CLS") for its use in cases which allow for the award of attorneys' fees. The most current range of CLS hourly rates is included in the record as Exhibit 9 to Plaintiff's post-trial petition (ECF 96) and shows that attorneys with more than 25 years' experience, in which category Plaintiff's lead counsel, David H. Shapiro, is included, is $360-$460.

The chart shows a range of rates for less senior attorneys ranging from $165 through $370. Law students and paralegals have separate rates.

Even though Plaintiff retained Mr. Shapiro in 2006, the Third Circuit has held use of current rates at the time of the fee petition to be appropriate when determining attorneys' fees petitions. Lanni, 259 F.3d at 149-50.

The Court also considers the affidavit of Alice W. Ballard, Esquire, a prominent and well-respected attorney in Philadelphia who specializes in representing plaintiffs in employment cases. Ms. Ballard has detailed the market rates for attorneys in employment cases, (ECF 98, Ex. 2), and the Court will give some weight to her opinion. Ms. Ballard believes that the CLS rate should not govern this case and an attorney of Mr. Shapiro's seniority and experience should be entitled to an hourly rate of $500.

### i.      Mr. Shapiro

Consistent with the division of Mr. Shapiro's reasonable hours into those for pretrial work, including drafting complaints, briefs, administrative proceedings, and discovery; those for summary judgment, final pretrial preparation, and trial; and those for post-trial work, the Court will also discuss Mr. Shapiro's reasonable hourly rates based on this division. The Court finds that Mr. Shapiro is entitled to a reasonable hourly rate for summary judgment, final pretrial preparation, and trial work that is slightly higher than the highest level on the CLS Chart, but consistent with the Ballard affidavit.

Mr. Shapiro filed Exhibit 7, setting forth a declaration of his vast experience as a litigator, in employment matters in particular, and Mr. Perkins was entitled to retain such an experienced lawyer. Mr. Shapiro had particular experience in representing government agency employees in litigation against government agencies. The Court believes this is a unique sub-specialty of employment law, and the Court is not aware of any experienced litigator in Philadelphia who has this same unique experience. Thus, Mr. Perkins was entitled to retain an attorney in Washington, D.C. even though that required some travel time in this case.

Another factor in awarding Mr. Shapiro a relatively high rate for the trial is the fact that he handled this trial himself, whereas many attorneys, representing clients such as Mr. Perkins

in a detailed and lengthy civil jury trial with many exhibits and a determined team of defense counsel, would have had an assistant in court.  Indeed, there were two Assistant U.S. Attorneys representing the VA at all times during the trial, but Mr. Shapiro handled Plaintiff's case himself.

However, the Court finds that Mr. Shapiro is entitled to a lesser reasonable hourly rate for pre- and post-trial work.  The Third Circuit has explicitly recognized that it may be "entirely appropriate for [a district court] to separate time for in-court work [and] trial preparation . . . for compensation at different rates."  McKenna, 582 F.3d at 457 (citing Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001) ("A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable.")).

Considering all of the above factors, the Court concludes that the appropriate rate for the award of attorneys' fees for Mr. Shapiro's time, from the mid range of the CLS rate for administrative agency and pre- and post-trial work, at $400 per hour, and for $500 for summary judgment, final pretrial preparation, and trial.

The Court also finds that Mr. Shapiro should be awarded these two reasonable rates for all of his work, despite his having handled some "lesser" tasks, including discovery and briefing.  This Court believes it is important for the senior trial lawyer for any client to get involved in the "nitty gritty" of client representation at times, including handling discovery, and working on briefs and processing documents, etc.  Involvement with and knowledge of these seemingly less important aspects of litigation may lack the excitement of representing a client in court, but mastery of all aspects of a case is important for the senior trial lawyer in representing the client, particularly when the case is headed to trial.

### ii.     Other Plaintiff's Attorneys

As noted above, the Court accepts Exhibit 8 as accurately representing who contributed to Plaintiff's representation and the hours they spent doing so.  However, the Court does find that work done by Mr. Shapiro's partner, Mr. Swick, who, to this Court's recollection, never appeared in court, warrants a lower hourly rate than Mr. Shapiro.  The legal issues in this case are not complex.  The discovery covered four years of activity and was thorough, but otherwise routine for an employment case.  Although the case was very important to Plaintiff and the government, and took a long time from filing to trial, the Court finds the delays were reasonable but the case was not particularly unique in any way.  Plaintiff was entitled to have an experienced lawyer such as Mr. Shapiro in charge, but the support work was not difficult.  For this reason, the Court believes that the use of a "blended" rate for all the other attorney time recorded in this case would be appropriate.  See S.M. ex rel. G.M. v. Sch. Dist. of Upper Dublin, Civil Action No. 10-4038, 2012 WL 2953727, at *7 (E.D. Pa. July 20, 2012) (Schiller, J.) ("Courts often arrive at a blended rate that accounts for tasks performed by junior-level associates, paralegals, and clerical staff." (citing Becker v. ARCO Chem. Co., 15 F.Supp.2d 621, 632 (E.D. Pa. 1998) (Robreno, J.) ("However, rather than assign an appropriate hourly rate on a task-by-task basis, the [c]ourt will consider these tasks, together with the other factors discussed above, to arrive at a 'blended rate' which will take into account the varying nature of the tasks performed by counsel.")))  After considering the CLS schedule and other matters set forth above and in the petition, the Court finds that the appropriate blended rate for lawyers other than Mr. Shapiro is $250.

### 3.      Reduction in Attorneys' Fees for Lack of Success on Major Claims

Pursuant to Hensley, now having determined the market rates, and having accepted the total number of hours recorded by counsel for Plaintiff (except for the post-trial hours spent on back pay and reinstatement), the Court must take into account the fact that Plaintiff recovered on only one claim, and the most minor claim.

The Third Circuit is clear that the Court may also consider the settlement posture of the parties in determining the relevant measure of success. Lohman v. Duryea Borough, 574 F.3d 163, 167-69 (3d Cir. 2009) ("While evidence of settlement negotiations is only one indicator of the measure of success, it is a permissible indicator . . . ."). Judge Strawbridge had several meetings with counsel, and after some resistance, Plaintiff's counsel had expressed a settlement demand which the Court believes was approximately $500,000. As the Court understands the government's position from the briefs, the government had rejected this, but had expressed some interest to Judge Strawbridge in settling for approximately $200,000. At trial, the Court made known its unwillingness to engage in detailed settlement discussions because Judge Strawbridge had already done so. At one point, at the beginning of trial, the Court inquired as to what the parties' current position was. Government counsel offered Plaintiff $175,000, which he rejected. The Court does not recall Plaintiff making a specific dollar demand during the trial. Obviously, the trial result must have been a great disappointment for Mr. Perkins, but the jury has spoken. However, the fact that the verdict is very low compared to the settlement dialogue deserves some weight on the relative percentage to use. Id. (evidence of settlement negotiations, while "clearly only one factor to be considered in the award of fees," is relevant to the Hensley limited success analysis as bearing on the comparison between "what a plaintiff 'requested' [and] what the plaintiff was ultimately 'awarded'").

The Court believes the fairest, most efficient, and also least complicated way of determining the appropriate attorneys' fee is to take percentage reductions in each of the hourly categories as described above.  Hensley, 461 U.S. at 436-37 ("There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment."); see also McKenna, 582 F.3d at 458 ("In the absence of specific time entries to indicate how the attorneys spent their time on the distinct claims [for which fees cannot be awarded], the [c]ourt reasonably used the information available to it to estimate a proper division of time.  In this regard, we cannot say that its findings were clearly erroneous.").

The Court rejects the government's argument that the fees should be reduced by 87% because Plaintiff won only on 1/6 of his claims in this Court.  See Eichenlaub v. Twp. of Indiana, 214 Fed. App'x 218, 222 (3d Cir. 2007) ("The [Supreme] Court expressly rejected a 'mathematical' approach to fees, in which fee awards would be proportional to the number of successful claims."  (citing Hensley, 461 U.S. at 435)).  Substantial legal work would have been required, even if the successful AWOL claim was the only claim in the case.  Other courts have noted that even where a plaintiff only receives nominal damages a substantial attorneys fee award may be appropriate for policy or other good reasons.  E.g., Jama, 577 F.3d at 176 n.8 (stating that "a nominal award on a [Religious Freedom Restoration Act] claim [does not] necessarily amount[] to a technical and de minimis victory.  The jury found that [two of the defendants] had violated [the plaintiff's] rights by substantially burdening her exercise of religion. The impact of such a violation on a victim may be uniquely difficult to express in monetary terms, but the significance of the right vindicated and the purpose served by the

litigation cannot be overlooked and, especially in the prison setting, should not be diminished." (emphasis in original)).

 Even if Mr. Perkins had decided to sue only for retaliation based on the AWOL claim, on which he prevailed, substantial discovery and pleadings would have been necessary.  The VA would have moved for summary judgment.  As noted above, the claim on which Plaintiff prevailed was intertwined with and related to his other claims, and the Court cannot neatly divide his counsel's work into compensable and non-compensable portions.

The Court notes that Mr. Shapiro has suggested a discount of 25%.   The Court arrives at its percentage not just to "be in the middle" of the disputing parties, but rather based on a rational determination the extent to which counsel should be rewarded given the results in the case, recognizing the congressional policy against discrimination in the workplace, and also allowing some incentive for competent counsel to undertake these types of cases.  If a court is too parsimonious in awarding fees, even if a plaintiff prevails on only one of several claims, the court has "cheapened" legal representation.  When an individual with colorable claims, which the Court believes is an accurate characterization of Plaintiff's claims, desires to sue as allowed by Congress, being fair to the plaintiff regarding his counsel's fees is an essential part of enforcement of our civil rights laws, including the laws against employment discrimination.

Consideration all of these factors, and review of other cases where the plaintiff has been successful on only minor claims, the Court finds the lodestar, and the appropriate percentage reductions from the lodestar, as follows:

|  | Hours | Rate | Total | Percentage Allowed | Total Allowed |
|---|---|---|---|---|---|
| David H. Shapiro |  |  |  |  |  |
| Administrative agency, and pretrial work | 365 | $ 400 | $ 146,000 | 35 % | $ 51,100 |
| Post-trial work on the fee petition | 34 | $ 400 | $ 13,600 | 100 % | $ 13,600 |
| Summary Judgment briefing and argument, final trial preparation, and trial | 575 | $ 500 | $ 287,500 | 55 % | $ 158,125 |
| All other attorneys | 290 | $ 250 | $ 72,500 | 30 % | $ 21,750 |
|  |  | TOTAL: | $ 519,600 |  | $ 244,575 |

An appropriate Order follows.

O:\CIVIL 07-08\08-1244 Perkins v. Shinseki\08cv1244.020813.memo.atty.fees.docx